The defendant appeals from the denial of his motion to suppress a firearm that was found in his shoe after he was arrested for punching a police officer who had unlawfully pat frisked him.[2] We affirm.
Background. We summarize the motion judge's findings of fact, with minor supplementation from uncontested testimony, noting that his findings are supported by the evidence, which he found credible. See Commonwealth v. Sparks, 433 Mass. 654, 656 (2001). At approximately, 8:30 P.M. on April 18, 2016, Worcester police officers Brian Piskator, Peter Roberge, and Thomas Barney, each a member of the city's gang unit, were in an unmarked vehicle, patrolling near Washington Square. Piskator saw what he believed, based on his training and experience, to be a drug transaction between occupants of a vehicle and several pedestrians. He turned his vehicle around to investigate, but by the time he returned to the location of the suspected drug deal, the suspects were gone.
As the officers continued past the location, they came upon three individuals, one of whom was the defendant; another was a known gang member. The officers initially suspected these individuals might be related to the drug transaction. The officers, who were armed and wore Kevlar vests labelled "Police," exited the vehicle and began to approach the three individuals. Piskator was aware of recent heightened gang violence in the area.
Although the officers had no reason to believe that any of the three were involved in the aforementioned gang violence and had determined by then that the three were not involved in the suspected drug deal, the officers pat frisked the three individuals, finding nothing. Piskator, who had pat frisked the defendant, then ordered the defendant to remove his shoes because, based on his training and experience, he knew that weapons could be hidden in shoes. The defendant complied, kicking his shoes off and pushing them towards the officer. As Piskator bent to look into the shoes, the defendant punched him in the face and attempted to run away. Piskator grabbed him with the assistance of the other two officers. After a struggle, Piskator used his taser device on the defendant, and he was arrested. Following the arrest, Roberge searched the defendant's shoes. Inside one of the shoes was a small silver loaded firearm.
The defendant moved to suppress the firearm. After an evidentiary hearing, during which the motion judge heard live testimony from Piskator and Roberge, he denied the motion.
Discussion. Absent clear error, we adopt the factual findings of the motion judge; however, we "independently determine the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. DePeiza, 449 Mass. 367, 369 (2007). The Commonwealth has the "burden to demonstrate that the police officers' stop and frisk of the defendant was within constitutional limits." Ibid.
1. Unconstitutional patfrisk. We begin by identifying the moment that the defendant was seized-that is, the moment when, in light of all of the circumstances surrounding an incident, a reasonable person in that situation would not feel free to leave. Commonwealth v. Stoute, 422 Mass. 782, 786 (1996). Here, we agree with the motion judge that the defendant was seized when Piskator pat frisked him.[3] Commonwealth v. Martin, 457 Mass. 14, 18 (2010). We also agree, as the Commonwealth concedes on appeal, that this seizure was not justified by reasonable suspicion that the defendant was committing, had committed, or was about to commit a crime. Commonwealth v. Mercado, 422 Mass. 367, 369 (1996). Prior to the time that the officers pat frisked the defendant, the officers already had determined that he was not involved in the suspected drug transaction. The only other reasons given for the patfrisk of the defendant were that he was with a known gang member and there was heightened concern about retaliatory violence after a recent uptick in gang related activity in the city. Notably, the officers had no basis to believe that the defendant had been involved in this uptick of gang violence. See Commonwealth v. Narcisse, 457 Mass. 1, 12-13 (2010) ; United States v. Gray, 213 F.3d 998, 1001 (8th Cir. 2000). Thus, there was inadequate evidence of reasonable suspicion warranting a seizure and patfrisk. The patfrisk was therefore unconstitutional, as was the escalation of the search when Piskator asked the defendant to remove his shoes.[4] Commonwealth v. Borges, 395 Mass. 788, 794 (1985). Had the search of his shoe gone forward at that time, the firearm found in his shoe would have been suppressed. See, e.g., ibid.
2. Attenuation doctrine. Here, however, the defendant punched Piskator as the officer turned toward the shoes to search them. The question becomes whether punching the officer was an intervening act that gave rise to probable cause to arrest the defendant for assault and battery on a police officer such that the search of the defendant's shoes was permissible (despite the prior unconstitutional patfrisk) as incident to the arrest. Chimel v. California, 395 U.S. 752, 755-756 (1969) ; Commonwealth v. Bowden, 379 Mass. 472, 477 (1980).
Relying on Commonwealth v. Martin, supra, the defendant contends that because the officers had decided to search the defendant's shoes before he punched Piskator, the firearm is the fruit of the poisonous tree and must be suppressed even though the subsequent arrest of the defendant was proper. 457 Mass. at 22. In Martin, an officer engaged in an investigatory field encounter of the defendant, determined that the defendant was not the person for whom he had an arrest warrant, and nonetheless informed the defendant that he was going to conduct a patfrisk. The defendant pushed the officer's hands away and objected to the search; in response, the officer told the defendant to "calm down" and proceeded with the patfrisk, which revealed a loaded gun. Id. at 22-23. The Supreme Judicial Court rejected the Commonwealth's argument that the defendant's pushing of the officer's hand away was an intervening act that attenuated the taint of the prior unconstitutional search, reasoning that the officer's renewed effort to pat frisk the defendant was not based, even in part, on the assault. Ibid. See Borges, 395 Mass. at 797 (officer's decision to search defendant was in no part based on defendant's flight). The court cautioned, however, that had the officers arrested the defendant for the assault, the result may have been different, noting that "[a]n illegal seizure does not render the seized individual immune from arrest regardless of his postseizure conduct." Martin, 457 Mass. at 23 n.9.
Unlike the pushing of the officer's hand in Martin, here, the defendant's punching of Piskator caused the officers to arrest him. Indeed, while Piskator was the one who attempted to search the defendant prior to being assaulted, it was Roberge who searched the shoes after the arrest. Unlike in Martin, here, the assault was an intervening criminal act of the defendant that, at least in part, formed the basis for the subsequent search of the shoes incident to that arrest. See, e.g., Commonwealth v. King, 389 Mass. 233, 245-246 (1983) ; Commonwealth v. Holmes, 34 Mass. App. Ct. 916, 918 (1993).
Order denying motion to suppress affirmed.

A single justice of the Supreme Judicial Court allowed the defendant's application for leave to pursue an interlocutory appeal.

Police officers may approach individuals and ask to question them without having to justify the encounter; however, adequate constitutional justification is required to escalate a consensual encounter into a seizure. Commonwealth v. Lyles, 453 Mass. 811, 814-815 (2009) ; Commonwealth v. Martin, 457 Mass. 14, 19 n.7 (2016).

The evidence also failed to satisfy the second prong of the Terry v. Ohio, 392 U.S. 1 (1968), analysis-namely, that the defendant was "armed and dangerous," id. at 25, as required to justify the patfrisk that occurred here. Commonwealth v. Narcisse, 457 Mass. 1, 9 (2010) ("[P]olice officers may not escalate a consensual encounter into a protective frisk absent a reasonable suspicion that an individual has committed, is committing, or is about to commit a criminal offense and is armed and dangerous").